IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LUVENIA ELVERTON,

                          Plaintiff,

            v.

PREMIERE CREDIT OF NORTH
AMERICA, LLC,

                        Defendant.

Case No. 17 C 2505

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Luvenia Elverton ("Elverton" or "Plaintiff") filed a two count Complaint charging Defendant Premiere Credit ("Premiere") with violating the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Illinois Collection Agency Act (the "ICAA"), 225 ILCS 452/1 *et seq.* Both parties now move for summary judgment. For the reasons stated herein, the Court grants Premiere's Motion and denies Elverton's.

## I. BACKGROUND

This is a case concerning fair debt collection practices. The Plaintiff, Ms. Elverton, accrued two debts from a visit to an Amsurg Corp. surgery center. (Dkt. 30-1 ¶ 5.) She owed one debt to Oak Lawn Endoscopy ASC LLC ("Endoscopy LLC") for the endoscopy services performed during Elverton's visit, and she

owed the other to Amsurg Oak Lawn IL Anesthesia LLC ("Anesthesia LLC") for the anesthesia services performed during the endoscopy. (Dkt. 34 ¶¶ 13-14.) Around September 13, 2016, Amsurg Corp.—corporate parent to both of Elverton's creditors—authorized Premiere to attempt to collect both debts. (*Id.* ¶ 8.) Shortly thereafter, Premiere sent a collection letter to Elverton. (*Id.* ¶ 9.) Because this suit challenges the sufficiency of that letter under the FDCPA and the ICAA, some recital of its contents is required.

The letter is a single, two-sided page. (*See,* Collection Letter, Dkt. 30-2.) The front states "Total Principal $3060.00" and "Total Amount Due $3060.00." A line appearing below these amounts reads: "<SEE REVERSE SIDE FOR DETAILED ACCOUNT INFORMATION>." (*Id.*) The next sentence states: "Your accounts owed to the above listed creditor have been referred to [Premiere] for the purpose of securing payment." (*Id.*) Finally, a notation at the top of this page states "Creditor: AMSURG OAK LAW IL ANESTHESIA LLC" and "Primary Account #: [redacted in original]-3112." (*Id.*) In material part, the reverse side contains a heading stating "ACCOUNT INFORMATION," which is followed by:

| Account # | Balance | Interest Rate | Creditor |
|---|---|---|---|
| [redacted]-3112 | 1477.00 | 0.0000% | AMSURG OAK LAWN IL ANESTHESIA LLC |
| [redacted]-1089 | 1583.00 | 0.0000% | OAK LAWN ENDOSCOPY ASC LCC |

## II.  LEGAL STANDARD

On a summary judgment motion, the movant bears the burden of establishing that there is no genuine dispute of any material fact and that she is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Ponsetti v. GE Pension Plan,* 614 F.3d 684, 691 (7th Cir. 2010).  The Court construes facts favorably to the nonmoving party and grants the nonmoving party all reasonable inferences in its favor.  *Bagley v. Blagojevich,* 646 F.3d 378, 388 (7th Cir. 2011) (quoting *Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010)).  On cross-motions for summary judgment, these ordinary standards remain unchanged.  *Blow v. Bijora, Inc.,* 855 F.3d 793, 797 (7th Cir. 2017) (citation omitted).

## III.  ANALYSIS

Elverton brings two claims, asserting violations of the FDCPA and the ICAA, respectively.  She predicates both claims upon the collection letter Premiere sent to her in September 2016.  The Court now considers each count in turn.

- 3 -

## A.  Standing for FDCPA Claims

Before we reach the merits of Plaintiff's FDCPA claim, the Court must consider standing.  Premiere claims Elverton cannot prove standing in light of the Supreme Court's decision in *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016).  "The jurisdiction of the federal courts is limited to 'Cases' and 'Controversies' as described in Article III, Section 2 of the Constitution." *Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583, 587 (7th Cir. 2016).  To meet "the 'irreducible constitutional minimum' of standing," a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Spokeo,* 136 S.Ct. at 1547 (citation and internal quotation marks omitted).  The plaintiff bears the burden of establishing that these three elements are met.  *See, id.* (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990)).  In its Motion, Premiere challenges only the first of these elements.  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (internal quotation marks omitted).  Bare procedural violations "divorced from any concrete harm" do not satisfy the

injury-in-fact requirement. *Id.* at 1549. But *Spokeo* did not dash the chances of all plaintiffs pursuing claims based solely on procedural violations. *Groshek v. Time Warner Cable, Inc.,* 865 F.3d 884, 887 (7th Cir. 2017) (finding that a statutory violation alone can give rise to a concrete injury). The Court noted that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," and that in such cases a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Spokeo,* 136 S.Ct. at 1549 (emphasis in original). In such cases, the plaintiff must show that "the statutory violation presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect by enacting the statute." *Groshek,* 865 F.3d at 887 (citing *Meyers v. Nicolet Rest. of De Pere, LLC,* 843 F.3d 724, 727 (7th Cir. 2016), *cert. denied,* 137 S.Ct. 2267 (2017)).

Congress passed the FDCPA to eliminate abusive debt collection practices, including misleading debt collection communications. *See, Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 577 (2010); *Bernal v. NRA Grp., LLC,* 318 F.R.D. 64, 72 (N.D. Ill. 2016) (citations omitted). By cracking down on such practices, the FDCPA imposed a "rule against trickery," *Beler v. Blatt, Hasenmiller, Leibsker &*

*Moore, LLC,* 480 F.3d 470, 473 (7th Cir. 2007), bestowing a right upon debtors to receive accurate information and an ability to enforce that right against collectors by suing under the FDCPA, *Haddad v. Midland Funding, LLC,* 255 F. Supp. 3d 735, 739 (N.D. Ill. 2017) (citing *Hahn v. Triumph P'ships LLC,* 557 F.3d 755, 757 (7th Cir. 2009)); *Marquez v. Weinstein, Pinson & Riley, P.S.,* No. 14 C 739, 2017 WL 4164170, at *3 (N.D. Ill. Sept. 20, 2017) (observing that the FDCPA seeks to curb deceptive practices by "arming debtors with accurate information about their debts."). The Seventh Circuit has not yet considered in a post-*Spokeo* opinion whether procedural violations of the FDCPA can, without more, confer standing. But there is a persuasive consensus among district courts in this Circuit that *Spokeo* did not upset the Article III applecart. *See, e.g., Keys v. Collection Prof'ls, Inc.,* No. 16 C 8452, 2018 WL 1469006, at *4 (N.D. Ill. Mar. 26, 2018); *Dunham v. Robert Crane & Assocs., LLC,* No. 116 CV 02100, 2017 WL 1423957, at *4 (S.D. Ind. Apr. 19, 2017), *report and recommendation adopted,* No. 116 CV 2100, 2017 WL 2664287 (S.D. Ind. June 20, 2017); *Long v. Fenton & McGarvey Law Firm P.S.C.,* 223 F. Supp. 3d 773, 776 (S.D. Ind. 2016) (collecting cases).

Here, Elverton avers that Premiere sent her a collection letter that failed to state effectively the amount of a debt and

the name of the creditor(s) in violation of 15 U.S.C. § 1692g(a)(1)-(2). That provision of inaccurate information created a risk of exactly the type of harm that Congress sought to avoid in passing the FDCPA: Without accurate information concerning their debts, debtors may pay the wrong creditor or tender insufficient payments. Congress contemplated these risks in crafting the FDCPA and in creating a private right of action for plaintiffs exposed to them. *See, e.g., Aguirre v. Absolute Resolutions Corp.,* No. 15 C 11111, 2017 WL 4280957, at *6 (N.D. Ill. Sept. 27, 2017); *Bernal,* 318 F.R.D. at 72; *cf. Haddad v. Midland Funding, LLC,* 255 F. Supp. 3d 735, 739-40 (N.D. Ill. 2017).

Beyond this, pre-*Spokeo* cases in this Circuit have found Article III standing based solely on a plaintiff's receiving allegedly unlawful debt collection demands, *see, e.g., Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076 (7th Cir. 2013); *Keele v. Wexler,* 149 F.3d 589 (7th Cir. 1998), and this Court has noted once already that these decisions remain good law as they are "harmonious with *Spokeo*'s recognition that 'the risk of real harm' can satisfy the requirement of concreteness." *Pierre v. Midland Credit Mgmt., Inc.,* No. 16 C 2895, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017) (citing *Spokeo,* 136 S.Ct. at 1549); *see also, Patterson v. Howe,* No. 116 CV 3364, 2018 WL 1566811,

at *7 (S.D. Ind. Mar. 30, 2018) (citing *Pierre* and agreeing that *Spokeo* did not overrule Seventh Circuit precedent affirming the power of Congress to enact statutes creating legal rights and to confer standing to pursue claims for the invasion of said rights).

Premiere suggests the Court instead follow the reasoning of *Jackson v. Abendroth & Russell, P.C.,* 207 F. Supp. 3d 945, 953-54 (S.D. Iowa 2016), in which the court found an FDCPA plaintiff lacked standing for his claim that a debt collector failed to include the disclosures required under § 1692g(a)-(b). First, *Jackson* is not controlling here nor in line with the earlier, and still authoritative, Seventh Circuit cases mentioned above. This is cause enough to lay *Jackson* aside for present purposes, but the Court adds one observation before doing so. *Jackson* bolsters its conclusion by relying on *Havens Realty Corporation v. Coleman,* 455 U.S. 363 (1982). In *Havens,* two employees of a Virginia-based non-profit contacted a landlord regarding vacancies; neither employee intended to actually rent in the building, however. *Id.* at 368. Instead, the employees—one white and one black—sought to determine whether the landlord would provide them with conflicting information, presumably on account of their respective races. *Id.* The landlord did so, and the plaintiffs sued under the Fair Housing Act, which

prohibits landlords from representing "to *any person* because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." *Id.* at 368, 373 (quoting 42 U.S.C. § 3604(d). Or, as the Court explained, "Congress has thus conferred on all 'persons' a legal right to truthful information about available housing." *Id.* at 373. The Court found the African-American plaintiff had suffered an injury in fact because, as the *Jackson* court put it: "[T]he harm suffered by the plaintiff . . . was the harm Congress intended to curb when it passed [the statute at issue]." *Jackson,* 207 F. Supp. 3d at 959 (citing *Havens Realty,* 455 U.S. at 375).

And yet, *Jackson* finds that the *Havens* reasoning does not translate to the FDCPA (or at least not to § 1692g(a) and (b)). The *Jackson* court opines that § 1692 confers procedural rights "designed to decrease the risk of injury identified by Congress in the FDCPA" but that violations of these rights do not result in such injuries on their own. *Jackson,* 207 F. Supp. 3d at 960. By tracing the reasoning of *Havens,* however, and cognizant of the controlling authority in *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076 (7th Cir. 2013) and *Keele v. Wexler,* 149 F.3d 589 (7th Cir. 1998), this Court respectfully disagrees. In *Havens,* a landlord's failure to provide accurate information on account

of an applicant's race sufficed for an injury in fact. 455 U.S. at 375. Here, a debt collector's failure to provide accurate information constitutes one of the abusive debt practices specifically ferreted out and legislated against by Congress in the FDCPA. If one purpose of the FDCPA is arming debtors with accurate information concerning their debts, *Marquez,* 2017 WL 4164170, at *3, a collector's statutory failure to do so results in the injury defined by Congress and suffices for standing. *Spokeo,* 136 S.Ct. at 1549 ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified.").

Beyond Jackson, two other recent, out-of-circuit decisions merit mention here. They are *Lyshe v. Levy,* 854 F.3d 855 (6th Cir. 2017), and *Hagy v. Demers & Adams,* 882 F.3d 616 (6th Cir. 2018). In *Lyshe,* the court found a plaintiff lacked standing to bring an FDCPA action where the defendants/debt collectors failed, *as required under state procedural rules,* to (1) provide electronic copies of the discovery without prompting, and (2) indicate that plaintiff's responses to the requests for admission were required to be sworn and notarized. *Lyshe v. Levy,* No. 2:16-CV-516, 2016 WL 8943336, at *1 (S.D. Ohio

Aug. 22, 2016), *aff'd,* 854 F.3d 855 (6th Cir. 2017). The Sixth Circuit summed up their conclusion thusly: "[U]nder *Spokeo,* [the plaintiff] would have us hold that the FDCPA created a concrete harm—receiving false information in connection with debt collection activities—that he suffered when [defendants/debt collectors] made misstatements in their discovery requests about state procedural rules. This view of the law is untenable." *Lyshe,* 854 F.3d at 859. In short, though the defendants committed some state-law, procedural violations, these infractions were divorced from the type of harm that the FDCPA seeks to protect. In this Court's reading of *Lyshe,* that disconnect doomed the plaintiff's shot at standing. *Id.* ("[T]he procedural violation alleged here—a violation of a state law procedure not required under FDCPA—is not the type contemplated by *Spokeo,* which dealt with the failure to comply with a statutory procedure that was designed to protect against the harm the statute was enacted to prevent."); *cf. Nicklaw v. Citimortgage, Inc.,* 839 F.3d 998, 1003 (11th Cir. 2016) (finding no standing in FDCPA case where plaintiff alleged a violation of a state procedural rule).

Then, just two months ago, the Sixth Circuit faced the FDCPA-standing quandary again in *Hagy.* In that case, the plaintiffs defaulted on a debt, but their debt collector agreed

- 11 -

to settle the claim in exchange for a warranty deed on their property. *Hagy*, 882 F.3d at 618-19. The plaintiffs agreed and tendered the deed. *Id.* at 619. The collector's attorney thereafter sent a letter to the plaintiffs' attorney, which explained that the collector was satisfied and would "not attempt to collect any deficiency balance." *Id.* In relevant part, the plaintiffs sued that attorney under the FDCPA for failing to disclose in his letter that the missive was a communication from a debt collector. *See,* 15 U.S.C. §§ 1692e(11). But as in *Lyshe,* this procedural misstep was divorced from the type of harm Congress intended the FDCPA to prevent: The plaintiffs did not argue the letter caused any risk of double payment or anxiety; rather, the letter gave them "peace of mind" by confirming that they had settled their debt. *Id.* at 621-22. The lawyer's omission of the disclosure was "not remotely harmful," so the plaintiffs had no standing to sue him for it. *Id.* at 622.

This Court may find standing for Elverton's claims without coming to loggerheads with *Lyshe* and *Hagy.* The misfeasance here is not a violation of a non-FDCPA-required state law procedure, as in *Lyshe,* nor a procedural misstep wholly divorced from the FDCPA's goal of protecting consumers from misleading debt-collection language, as in *Hagy.* Elverton asserts that by

- 12 -

providing confusing information, Premiere failed to identify the name of her creditor and the amount she owed. The FDCPA requires more, and a collector's failure to meet these obligations presents an "appreciable risk" of debtors making improper payments. *See, Groshek v. Time Warner Cable, Inc.,* 865 F.3d 884, 887 (7th Cir. 2017).

Elverton has suffered an injury in fact. Premiere does not challenge the other two standing requirements, and with good reason. Premiere sent the letter individually to Elverton, so her injury was "particularized," as it "affect[ed] [her] in a personal and individual way." *Spokeo,* 136 S.Ct. at 1548 (internal quotation marks and citation omitted). That injury resulted from Premiere's sending of the collecting letter, and a favorable judicial decision could compensate Elverton for that injury through an award of statutory damages. *See,* 15 U.S.C. § 1692k(a); *Bernal,* 318 F.R.D. at 72-73. Elverton has standing to press her FDCPA claims.

## B. FDCPA Claims

To establish a *prima facie* case under the FDCPA, a plaintiff must prove: she is a natural person or "consumer" who was harmed by a violation of the FDCPA; the debt arises from a transaction entered for personal, family, or household purposes; the defendant is a debt collector; and the defendant has

- 13 -

violated a provision of the FDCPA. *Pantoja v. Portfolio Recovery Assocs., LLC,* 78 F. Supp. 3d 743, 745 (N.D. Ill. 2015), *aff'd,* 852 F.3d 679 (7th Cir. 2017), *cert. denied,* 138 S.Ct. 736 (Jan. 16, 2018). All but the last of these elements are undisputed. As to the last, Elverton asserts Premiere violated the FDCPA by failing to state in its notice letter the correct amount of the debt, 15 U.S.C. § 1692g(a)(1), and the name of the creditor, 15 U.S.C. § 1692g(a)(2). Courts in this Circuit view FDCPA claims through the eyes of an "unsophisticated debtor." *McMillan v. Collection Prof'ls Inc.,* 455 F.3d 754, 758 (7th Cir. 2006) (citation omitted). In the context of a § 1692g claim, "[h]ow a particular notice affects its audience is a question of fact." *Id.* However, the Court will not entertain a plaintiff's "bizarre, peculiar, or idiosyncratic interpretation of a collection letter." *Id.* (citing *Durkin v. Equifax Check Servs., Inc.,* 406 F.3d 410, 414 (7th Cir. 2005)).

The unsophisticated debtor is "uninformed, naive, or trusting," but he is not completely ignorant. *Pettit v. Retrieval Masters Creditor Bureau, Inc.,* 211 F.3d 1057, 1060 (7th Cir. 2000) (citations omitted). He is uneducated, but possesses "rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making

- 14 -

basic logical deductions and inferences." *Williams v. OSI Educ. Servs., Inc.,* 505 F.3d 675, 678 (7th Cir. 2007) (citations omitted). Whether collection language would confuse an unsophisticated consumer is an objective test. *Id.* at 677 (citation omitted). Finally, a plaintiff arguing a statement is confusing or misleading cannot prevail under this standard unless a significant fraction of the population would be similarly misled. *Pettit,* 211 F.3d at 1060.

Both of Elverton's FDCPA gripes trace to the same unartful design element in Premiere's letter. The front of the letter mentions only one creditor, Anesthesia LLC, and one sum, $3,060. A line beneath this sum indicates that the "accounts owed to the above listed creditor have been referred to Premiere [for collection]." But in a twist that Elverton deems "hopelessly confusing," (Dkt. 35 at 7), the letter's backside mentions not one, but *two* creditors, Anesthesia LLC and Endoscopy LLC, and *two* sums, $1,477 and $1,583, respectively. (Collection Letter, Dkt. 27-7.) Her claims stem from her purported inability to parse this information.

Perhaps this letter truly confused Elverton. But the unsophisticated debtor test is objective, and Elverton's subjective puzzlement cannot carry the day. *See, Williams,* 505 F. 3d at 677. True, the front of the letter could suggest to an

unsophisticated debtor that she owed the full $3,060 to Anesthesia LLC. If the letter ended there, Elverton may well have been entitled to summary judgment. But the letter also states, in clear, centered text appearing directly below the recitation of the sum due: "<SEE REVERSE SIDE FOR DETAIL ACCOUNT INFORMATION>." Such a warning adequately advises the uninformed consumer where to find further account information and mitigates the risk of confusion. *Zemeckis v. Glob. Credit & Collection Corp.,* 679 F.3d 632, 637 (7th Cir. 2012) (affirming dismissal of § 1692g claim where collection letter contained a similar advertisement). Further, this is not a case like *Smith v. American Revenue Corp.,* No. 04-cv-00199, 2005 U.S. Dist. Lexis 48680, at *16-18, where the court found patently confusing a collection letter that combined into a lump sum and without explanation amounts due to three creditors across fourteen accounts. Here, Premiere's letter did not involve manifold debts requiring some sophisticated wherewithal to discern. The backside of Premiere's letter listed two different creditors and two distinct debts, as Elverton acknowledges: "[The breakdown on the reverse side] demonstrates that not one but two different and clearly distinct creditors were listed in the collection letter." (Dkt. 35 at 8.) The sum of these two debts is $3,060, the same as the "Total Amount Due" described on the letter's

front. Further, the letter appends a unique account number to each of these debts; every time the letter lists one of the creditors, the respective account number also appears. To be clear, the Court in no way finds Premiere's letter to be a portrait of clarity or an ideal "example of debt collection at its finest." *Zemeckis,* 679 F.3d at 637 (citations omitted). Including both creditors at the top of the front page and pluralizing the letter's description to "above listed creditor[s]" would have cut down on some unnecessary page-turning. Still, though imperfect, this letter may be readily understood by making basic deductions and inferences. *Williams,* 505 F.3d at 678. An unsophisticated consumer is capable of that much, so Premiere is entitled to summary judgment on Elverton's FDCPA claims.

### C. Private Right of Action for ICAA Claims.

As with standing *vis-à-vis* Elverton's FDCPA claims, Premiere raises a threshold objection to Elverton's claims under the ICAA. Specifically, Premiere challenges whether Elverton has a private right of action under § 9, which does not expressly confer one. Complicating the matter, the Illinois Supreme Court has not squarely decided whether an implied private right of action exists within this section. *Eul v. Transworld Sys.,* No. 15 C 7755, 2017 WL 1178537, at *16 (N.D.

- 17 -

Ill. Mar. 30, 2017). The debate thus centers on whether the Court should follow *Sherman v. Field Clinic,* 392 N.E.2d 154 (Ill. App. Ct. 1979), in which the Illinois appellate court found an implied private right of action in § 9, or whether the Court should deviate from *Sherman* based on "persuasive indications" that the Illinois Supreme Court would decide the issue differently. *Zahn v. N. Am. Power & Gas, LLC,* 815 F.3d 1082, 1087-88 (7th Cir. 2016). Recently, Chief Judge Rubén Castillo considered this very issue.

In *Eul,* Chief Judge Castillo observed that "*Sherman* was decided nearly 40 years ago, and no Illinois appellate decision before or since has found, applied, or even mentioned an implied private right of action under § 9." 2017 WL 1178537, at *17. Rather than repeating all of *Eul*'s rationales here, the Court will just note them briefly: (1) the Illinois Department of Financial and Professional Regulation and the Illinois Attorney General are expressly authorized to take action in cases of conduct proscribed by § 9, reflecting a legislative intent not to imply a private right of action; (2) when a statute confers power on an administrative agency and expressly adopts Illinois' Administrate Review Law, circuit courts have no authority to entertain independent actions, *Metzger v. DaRosa,* 805 N.E.2d 1165, 1171 (Ill. 2004), and the ICAA does both; (3) other

- 18 -

sections in the ICAA expressly provide a private right of action, suggesting again the legislature's intent to omit one from § 9; and (4) the Illinois Supreme Court has suggested in dicta that the ICAA does not carry with it any implied private rights of action, *People ex rel. Daley v. Datacom Sys. Corp.,* 585 N.E.2d 51, 62 (Ill. 1991). *Eul,* 2017 WL 1178537, at *16-18.

Elverton offers little rejoinder to *Eul*'s reasoning save to cite *Sawyer Realty Group, Inc. v. Jarvis Corp.,* 432 N.E.2d 849, 852 (Ill. 1982), in which the state Supreme Court favorably cites *Sherman*'s implied private right of action analysis in dicta. But the *Eul* court considered this also, and found *Datacom*'s dicta more persuasive than *Sawyer*'s because *Datacom* expressly refers to the ICAA and is more recent. This Court agrees.

In summary, though the *Eul* decision is not controlling authority, this Court finds it well and fully reasoned, taking into account legislative intent, the construction of § 9 within the ICAA as a whole, and the historical treatment of the *Sherman* opinion by Illinois courts. The Court thus finds *Eul* to be persuasive and now, if not already clear, endorses its conclusion. There are persuasive indications that the Illinois Supreme Court would decide § 9 does not contain an implied private right of action. *Zahn,* 815 F.3d at 1087. As such,

Elverton may not proceed with her ICAA claim. The Court grants summary judgment on this claim for Premiere.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, Premiere's Motion for Summary Judgment (ECF No. 28) is granted and Elverton's Cross-Motion for Summary Judgment (ECF No. 25) is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 4/16/2018